IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL ACTION NO.: 3:24-cv-02472-MGL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| $47,980.00 IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant *in Rem*. | ) | |

**UNITED STATES' COMPLAINT FOR FORFEITURE *IN REM***

The Plaintiff, United States of America, brings this complaint and alleges as follows, in accordance with Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions.

**NATURE OF THE ACTION**

1.    This is a civil action *in rem* to forfeit to the United States of America funds in the amount of $47,980.00 in U.S. Currency ("Defendant Currency"), pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C). The United States seeks forfeiture based upon a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Currency constitutes, or is traceable to:

   a.    money furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act; proceeds traceable

    to such an exchange; or money used and intended to be used to facilitate a violation of the Controlled Substances Act;

  b.  property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and/or § 1956(a)(1)(B)(i) and/or 1957;

  c.  property involved in an illegal money transmitting business, in violation of 18 U.S.C. § 1960; and/or

  d.  proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(c)(7) and;

  e.  proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(h).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355. This Court has *in rem* jurisdiction over the Defendant Currency pursuant to:

  (a)  28 U.S.C. § 1355(b)(1)(A), because acts or omissions giving rise to the forfeiture occurred in the District of South Carolina; and

  (b)  28 U.S.C. § 1355(b)(1)(B), because venue properly lies in this district pursuant to 28 U.S.C. § 1395.

**THE DEFENDANT *IN REM***

3. The Defendant Currency consists of $47,980.00 in United States currency seized from Ali Isnor ("Isnor") by officers of the Sumter County Sheriff's Office on January 8, 2024, in Sumter County, South Carolina.

4. The seizure was adopted by the Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") for federal forfeiture. The Defendant Currency is currently on deposit in this district in an account under the control of United States Customs and Border Protection ("CBP").

5. In accordance with the provisions of 19 U.S.C. § 1606, the Defendant Currency has a total domestic value of approximately $47,980.00.

**KNOWN POTENTIAL CLAIMANTS**

6. The known individuals whose interests may be affected by this litigation are:

   a. Ali Isnor, may have an interest in the Defendant Currency because he was the driver of the vehicle from which it was seized and because he filed an administrative claim with HSI on February 6, 2024, contesting administrative forfeiture of the Defendant Currency.

**BASIS FOR FORFEITURE**

7. Pursuant to the pleading requirements of Supplemental Rule G(2)(f), Plaintiff alleges that there is a factual basis to support a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Currency is subject to forfeiture to the United States, based in part upon the following:

3

a. Interstate 95 ("I-95") is a known corridor for the transportation of illegal drugs and drug-related currency. Miami, Florida is a "source city" for illegal drugs; that is, the Miami area is a principal source of supply for large-scale quantities of drugs for re-distribution throughout the Eastern and Southeastern United States. The drug trafficking business is primarily an all-cash business, which necessitates that those involved in drug trafficking often transport large amounts of currency.

It is common in the drug trafficking business for money to be bundled in increments of $1,000 to $10,000, depending on the size of the transaction. Such bundling of currency makes it easy for a buyer to exchange a specified amount of bundles for a specified amount of drugs and eliminates the need to count each and every bill, particularly among individuals familiar with each other. Those involved in drug runs to Florida through North Carolina and South Carolina often have large amounts of currency when traveling in the direction of Florida. During and after traffic stops, it is common for those involved in transporting illegal drugs and/or drug-related currency to give false, changing, inconsistent, and/or incomplete explanations regarding the nature and purposes of the trip, or to give explanations which defy common sense.

b. Corporal Zachary Rutan ("Cpl. Rutan") is a Sumter County Sheriff's Office Canine Deputy and Homeland Security Investigations ("HSI") Task Force Officer and has extensive training and experience in the interdiction of illegal drugs and drug-related currency, as well as with traffic violations and related traffic stops. On January 8, 2024, Cpl. Rutan, while conducting traffic enforcement on I-95, observed a gray Jeep Compass

driving in the right lane behind a tractor trailer with only 1 car length of distance between the vehicles at speeds of 70 mph. Cpl. Rutan conducted a traffic stop on the vehicle and made contact with the driver and sole occupant of the vehicle who identified himself as Ali Isnor. Cpl. Rutan could smell the strong and distinct odor of marijuana coming from the inside vehicle. Isnor provided a rental agreement that showed Juslene Isnor[1] rented the vehicle on Saturday, January 6, 2024. Cpl. Rutan invited Isnor back to his vehicle for the enforcement action and called for backup. Isnor stated that he drove up from Pompano Beach Florida on Saturday to an unspecified location in North Carolina to meet his cousin to travel to an automobile auction in Delaware.

      c.      He was unable to identify the city or address where he met his cousin, noting he was unfamiliar with the area, and advised Cpl. Rutan that they ultimately decided not to attend the auction. He later stated he had not been in North Carolina and had only stayed "close" to North Carolina; he said he was supposed to stay there for three days before going to the automobile auction but had decided not to go after discovering online that the auction would only include American cars.

      d.      When asked if there was any marijuana in the vehicle, Isnor noted that the officer probably smelled marijuana, but asserted there was none in the vehicle. In response to the Cpl. Rutan's inquiry as to whether he was transporting any large sums of money, Isnor stated, "I went to the auction," and advised he had $48,000.00. Isnor then consented to a search of the vehicle.

---

[1] Ali Isnor later identified Juslene Isnor as his wife.

      d.      Cpl. Rutan was assisted by Cpl. Kiernan (a Sumter County Sheriff's Office deputy) in searching the vehicle. Inside the vehicle on the front passenger floorboard was a "Buc-ees" plastic shopping bag with loose tobacco, commonly seen with marijuana use (where they empty out a cigar and fill it with marijuana). On the back seat of the vehicle, Cpl. Rutan located a backpack containing a Louis Vuitton shopping bag containing a bulk amount of mixed domination U.S. currency. The currency consisted of mixed denominations held together by rubber bands in what appeared to be $1,000.00 increments.[2]

      e.      Isnor advised that he had intended to use the currency to purchase vehicles at the automobile auction. He asserted it came from his businesses—a painting business, known as "Good Guys Painting," and an export business through which he ships vehicles and other goods to Haiti for sale.[3] Isnor was unable to provide any bank statements or other documents supporting this assertion.

      e.      Using his narcotics detecting canine Orlo, Cpl. K9 Rutan conducted a "controlled" hide with the currency and the Louis Vuitton bag on the shoulder of the interstate. Cpl. K9 Rutan observed behavior changes when Orlo approached the bag, which included a tail wag and focused sniffing (mouth closed). Orlo gave a final indication by getting into a down position, pawing at the bag, and attempting to put his nose into the bag.

---

[2] Bundling large amounts of mixed denomination U.S. Currency in $1,000.00 increments is common with the sale of illegal drugs.
[3] Isnor is a citizen of Haiti.

  f. Cpl. Rutan and K-9 Orlo have received extensive training in the field of narcotics detection and have been certified by the National Tactical Police Dog Association and Tarheel Canine Training, Inc., since March 20223.  Cpl. Rutan and K-9 Orlo have been involved in numerous dog alerts which resulted in the location and seizure of illegal drugs and money since they were certified.  K-9 Orlo is trained to alert (i.e., to react) to the odor of chemicals associated with marijuana, cocaine, heroin, methamphetamine or anything derived from these substances.

  g. Cpl. Rutan filled out a HSI seizure property form. He provided a copy of this form to Isnor advising him that HSI would be seizing the currency. Pursuant to 18 U.S.C. § 981 HSI seized undetermined amount of bulk currency. The undetermined amount of bulk currency was turned over to Special Agent Robert A. Roy with HSI for a final count at the bank, which revealed $47,980.00 in United States Currency was seized.

  h. During the traffic stop and seizure on January 8, 2024, Ali Isnor provided his phone number as xxx-xxx-9165. HSI Columbia obtained subscriber information and call detail records for 9165.

The call detail records reveal 9165 was in contact with the phone number xxx-xxx-8715 more than (60) times from August 2023 through January 8, 2024. The phone number 8715 is indexed in a HSI investigation involving the trafficking of cocaine.

On November 7, 2023, Customs and Border Protection ("CBP") Air and Marine Operations Center ("AMOC") identified a vessel headed toward Port Everglades, Florida. CBP Marine Interdiction Agents ("MIA") stopped the vessel and escorted the vessel to port

7

for a secondary inspection and border search. HSI, CBP MIA and the Broward Sherriff's Office ("BSO") conducted the search. A CBP narcotics dog (K9) conducted a sniff of the vessel and its contents. The search resulted in the discovery of approximately 118 kilograms of cocaine. Call detail records obtained pursuant to the seizure of cocaine and subsequent investigation identified the phone number 8715.

The Jeep driven by Ali Isnor on January 8, 2024, was rented on January 6, 2024, by Juslene Isnor from Enterprise in Pompano Beach, FL. From January 6, 2024, through January 8, 2024, Ali Isnor and 8715 were in contact 25 times. This is more than a third of the total contacts between Ali Isnor and 8715.

The traffic stop of Ali Isnor on January 8, 2024, occurred at 10:05 AM. After this time, Ali Isnor and 8715 were in contact 8 times.

Ali Isnor was in contact with 8715 in August and October of 2023. Beginning December 31, 2024 and through January 8, 2024, Ali Isnor and 8715 were in contact every day, except January 1, 2024.

i. Ali Isnor was also in contact with the phone number xxx-xxx-2991 on January 7, 2024. A search of law enforcement databases indicated 2991 is used by an individual indexed in a previous HSI Tampa bulk cash smuggling investigation. On July 2, 2019, HSI Tampa received information from the Transportation and Security Administration (TSA) about a large amount of U.S. currency concealed in checked luggage at the Tampa International Airport (TIA). The owner of the luggage, identified as Nikki

8

Vo, had already departed on her flight to Las Vegas, Nevada before she could be notified that her luggage was being inspected.

The luggage contained five large manila envelopes labeled "legal documents" with the currency wrapped in cellophane and / or vacuum sealed bags. A narcotics detection canine alerted to a narcotic odor on the currency. HSI Tampa seized $114,130.00 in U.S. currency and other evidence.

HSI Tampa submitted the cellophane/wrappings to the HSI Forensic Laboratory. On August 28, 2019, HSI Tampa received the wrappings and Examination Report from the HSI Forensic Laboratory. The HSI Forensic Laboratory found five latent fingerprints on the envelopes and other materials used to conceal the U.S. currency in the suitcase checked by Nikki Vo.

The fingerprints were run through law enforcement databases that returned a positive match for the individual indexed with phone number 2991 in a previous HSI Tampa bulk cash smuggling investigation. This individual has an extensive criminal history including a 2004 Federal 120-month sentence for the Possession of 12 kilograms of cocaine with the Intent to Distribute in Savannah, Georgia. On October 21, 2019, the $114,130.00 was forfeited. Vo did not respond to any of the notifications made by Customs and Border Protection (CBP) during the forfeiture proceedings.

j.   The call detail records for Ali ISNOR (xxx-xxx-9165) did not include any Delaware area codes (302) including the phone number for the Delaware Public Auto

Auction, 2323 N. Dupont Hwy., New Castle, Delaware 19720, phone number xxx-xxx-0500.

  k. The call detail records for Ali ISNOR (xxx-xxx-9165) from January 6, 2024, through January 8, 2024, did not include any North Carolina area codes including 252, 336, 704, 828, 910, 919, 980 and 984.

  l. Isnor's criminal history showed charges from Pompano Beach Police Department and Broward County Sheriff's Office for cocaine trafficking.

  m. HSI issued a subpoena to the Florida Department of Commerce requesting information concerning Isnor. The Florida Department of Commerce responded by advising that Isnor had no reported wages or employment since 2012.

  n. A search of Isnor's travel history since 2020 revealed the following trips:

- Port-Au-Prince, Haiti, to Fort Lauderdale, Florida, on July 15, 2020;
- Santo Domingo, Dominican Republic, to Fort Lauderdale, Florida, on August 28, 2023;
- Bogota, Colombia, to Fort Lauderdale, Florida, on February 26, 2024.

Notably, to date, HSI has been unable identify any Department of Homeland Security ("DHS") records showing trips made by Isnor since 2020 *from* the United States to a foreign country. DHS records show that Isnor purchased several outbound flights from the United States during this time, but those records indicate that Isnor did not board those flights.

  o. HSI issued a subpoena to AT&T requesting information associated with the phone number Isnor provided to law enforcement xxx-xxx-9165. The subscriber information identified a Dish Network/Boost Mobile store activated the account on January 25, 2023, and was a "postpaid account."[4]

  p. DHS export records found two (2) export shipments for Ali Isnor. These shipments are:

   1. In May of 2016, Ali Isnor, 295 NE 44 Ct., Pompano Beach, FL 33064 and phone number xxx-xxx-8014, was the U.S. principal for the export of a 2003 Honda Pilot, valued at $1,500.00, from the U.S. to Haiti. The ultimate consignee was Ali Isnor.

   2. In July of 2016, Ali Isnor, 295 NE 44 Ct., Deerfield Beach, FL 33064 and phone number xxx-xxx-8014, was the U.S. principal for the export of a 2003 Honda vehicle, make and model not listed and valued at $6,000.00, from the U.S. to Haiti. The ultimate consignee was Ali Isnor.

The total value of these two (2) exports is $7,500.00, however, the VIN number 2HKYF18443H580858 was listed as the VIN for the export of both vehicles.

---

[4] Based upon training and experience, the use of this type of subscriber name and address is indicative of phones used in criminal activity to conceal and compartmentalize names and addresses from law enforcement.

      q.      HSI then conducted a search of DHS records for exports attributed to businesses and addresses of Ali Isnor. These business were identified through a search of the Florida Division of Corporations website for Ali Isnor and Isnor's known addresses and businesses:

    1. Good Guys Painting and Pressure Cleaning LLC

    2. Mantis Shrimp Import Export LLC

    3. Good Guys Painting LLC

    4. Spend Smart LLC

    5. 2520 N.W 16th Lane Unit#1, Pompano Beach, FL 33064

    6. 431 NE 33rd Street, Pompano Beach, FL 33064

    7. 295 NE 44th Ct, Deerfield Beach, FL 33064

    8. 3521 8th Ave., Pompano Beach, FL 33064

The search did not find any records of export concerning Ali Isnor or the businesses listed above other than previously identified Honda Pilot export above in Paragraph p.

      r.      A final count determined that the Defendant Currency totaled $47,980.00 and was comprised of the following denominations:

- 20 fifty-dollar bills ($1,000.00)
- 2,253 twenty-dollar bills ($45,060.00)
- 127 ten-dollar bills ($1,270.00)
- 130 five-dollar bills ($650.00)

8.     Based on the information and allegations set forth herein, there is a factual basis to support a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Currency constitutes, or is traceable to:

    a.    money furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act; proceeds traceable to such an exchange; or money used and intended to be used to facilitate a violation of the Controlled Substances Act;

    b.    property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and/or § 1956(a)(1)(B)(i) and/or 1957;

    c.    property involved in an illegal money transmitting business, in violation of 18 U.S.C. § 1960;

    d.    proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(c)(7); and/or

    e.    proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(h).

## **CONCLUSION**

9.     By reason of these premises, and pursuant to 18 U.S.C. § 981(f) and 21 U.S.C. § 881(h), whereby the Plaintiff's right, title and interest in and to the Defendant Currency relates back to the commission of the act giving rise to the forfeiture, the Defendant Currency has become and is forfeited to the United States of America, to be disposed of

pursuant to Supplemental Rule G(7)(c) for Admiralty or Maritime Claims and Asset Forfeiture Actions, 18 U.S.C. § 981(d), 21 U.S.C. § 881(e), and other applicable laws.

WHEREFORE, Plaintiff prays that due process issue to enforce the forfeiture of the Defendant Currency, *in rem*; that a Warrant for the Arrest of the Defendant Currency be issued; that due Notice be given to all interested persons to appear, make claim, answer and show cause why the forfeiture should not be decreed; that the Defendant Currency be decreed condemned and forfeited to the United States of America for disposition according to law; and that Plaintiff have such other and further relief as the Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By: *s/Carrie Fisher Sherard*
Carrie Fisher Sherard #10134
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, SC 29601
(864) 282-2100